# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ARDEN GROUP, INC., et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | No. 09-3193 |
| v. | : | |
| | : | |
| CAMILLE O. HOFFMAN, et al., | : | |
| Defendants. | : | |

**Goldberg, J.**                                                                                    **December 12, 2012**

## MEMORANDUM OPINION

This case involves a claim by Cross-Plaintiff Robert Schulz for indemnification of legal fees and expenses pursuant to the Illinois Business Corporation Act ("IBCA").[1] Schulz alleges that these fees were "reasonably incurred" in successfully defending himself in the underlying litigation.

Currently at issue is Cross-Defendant Oliver Hoffman Corporation's ("OHC") request to amend its answer to include a waiver defense, and the parties' disagreement over whether OHC is entitled to a jury trial. For reasons set forth below, we conclude that OHC's proposed amendment would be futile. We also conclude that OHC is entitled to have a jury resolve the dispute between the parties, and will permit it to file a late jury demand.

## I. Factual and Procedural Background

On June 19, 2009, Plaintiffs in the underlying litigation, The Arden Group, Inc. and Craig Spencer, filed suit against OHC, Schulz and several other business entities and individuals. While

---

[1] As the underlying suit was dismissed by stipulation, the only remaining issue in this action is Schulz's cross-claim against his former employer, Oliver Hoffman Corporation.

1

the specifics of this lawsuit are not germane to the dispute before us, the case generally involved contract and tort claims arising from a failed joint business venture. Schulz served as vice president of OHC at the time of the events at issue and was sued in his individual capacity.

On June 2, 2010, Schulz filed a cross-claim against OHC pursuant to the IBCA seeking indemnification for the legal fees and expenses he incurred in connection with the Arden Group lawsuit. On February 25, 2011, following a stipulation of settlement of the underlying litigation, Schulz filed a motion for summary judgment on his cross-claim. OHC opposed the motion, arguing that there was a genuine issue of material fact as to whether Schulz's fees were reasonably incurred, as required by the IBCA. Specifically, OHC contended that it provided Schulz with free legal representation along with the other named defendants, and that Schulz's decision to decline that offer was unreasonable. Schulz countered that his fees were reasonably incurred because he determined that it was in his best interest to retain independent counsel after OHC refused his request for indemnification in the event he was found personally liable.[2] We denied Schulz's motion, finding that a genuine issue of material fact existed with respect to whether his attorneys' fees were "reasonably incurred." (Nov. 30, 2011 Summ J. Mem. Op. 6-7.)

Presently before us is OHC's "Motion for Leave to File an Amended Answer and Affirmative Defense." In this motion, OHC requests that the Court grant it leave to file an amended answer to include the affirmative defense of waiver. OHC also requests that we clarify that the jury demand

---

[2] Since disposition of the summary judgment motion, Schulz has indicated that his decision to retain independent counsel was also necessitated by a concern that the attorneys jointly representing the defendants would not act in his best interest. Schulz indicated that this concern arose after those attorneys negotiated a stipulation to dismiss certain individual defendants, but not Schulz. (Hr'g Tr. June 7, 2012, pp. 7:18-10:5.)

requested by plaintiffs in the original Arden Group litigation applies to the current dispute between Schulz and OHC. In the alternative, OHC requests that it be permitted to file an untimely jury demand. We address each issue below.

II. **Discussion**

　　A.　**The Proposed Amended Answer and the Waiver Defense**

OHC first moves to amend its answer to assert a waiver defense. This new defense rests solely on correspondence dated July 20, 2009 from the law firm of Ackerman, Link & Satory, P.A. ("Ackerman Link") to Schulz and the other defendants. The correspondence contained the terms and conditions regarding the joint representation of Schulz and the other defendants in the underlying Arden Group litigation. OHC argues that certain language in this letter supports its proposed waiver defense. (OHC's Mot. Ex. A.)

Read as a whole, it is clear that the correspondence from Ackerman Link addresses the issue of that firm representing multiple defendants and states that it was the firm's belief that there was no existing conflict of interest presented by the representation of all defendants. The correspondence also advises that if any conflicts of interest, potential conflicts of interest or strategic disagreements should arise, each client would agree that Ackerman Link would need to determine whether it could properly continue to represent that client and, in the event of a strategic disagreement, Ackerman Link would continue to represent all other clients. (OHC's Mot. Ex. B.)

In support of its waiver argument, OHC relies entirely on one portion of the correspondence, which states: "[i]f there arises a fundamental disagreement between clients on a strategic decision in the case, then each of you agree that we may continue to represent all other clients listed above and that the individual client that has a disagreement will seek independent counsel at his/her own

expense." OHC also points to language in which Ackerman Link informed the recipients that if they "desire to consult independent counsel concerning this representation, feel free to do so," and language indicating that the firm required each client to "confirm, in writing, both [his] understanding of the implications of [the] multiple representation in these matters, and [his] consent to that representation." OHC notes that Schulz agreed to the joint representation, but then sought independent counsel shortly thereafter. (OHC's Mot. 2, Exs. A, B.)

With the above language in mind, OHC alleges that Schulz left the joint representation because he felt "uncomfortable" with Ackerman Link's decision to enter a stipulation dismissing certain individual defendants and not him. OHC contends that the stipulation was a "strategic decision in the case." As such, OHC asserts that Schulz's disagreement with that decision and retention of independent counsel constitutes a waiver of Schulz's indemnification rights under the IBCA, and the Court should thus allow its proposed amended answer. (OHC's Mot. 2-3, Ex. A.)

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading, including an answer to the complaint, should be freely given "when justice so requires." FED. R. CIV. P. 15(a); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("The plain terms of Rule 15(a) do not discriminate on the basis of type of pleading. The liberal right to amend extends to an answer to the complaint."). The grounds upon which a court may deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "An amendment is considered futile if it advances a claim or defense that is legally insufficient on its face"—that is, it would not survive a motion to dismiss. Eisai Co., Ltd. v. Teva Pharm. USA, Inc., 247 F.R.D. 445, 449 (D.N.J.

4

2007); Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 765 (D.N.J. 2000). In making its determination as to futility, a court looks only to the pleadings. Pharm. Sales & Consulting Corp., 106 F. Supp. 2d at 765.

After careful review of OHC's proposed amendment, we conclude that it is futile. To constitute waiver under Illinois law,[3] a defendant must demonstrate: (1) the existence of a known right, and (2) a voluntary and intentional relinquishment of that right. Home Ins. Co. v. Cincinnati Ins. Co., 821 N.E.2d 269, 282 (Ill. 2004). Waiver can arise either expressly or implicitly by conduct inconsistent with an intent to enforce a right. In re Nitz, 739 N.E.2d 93, 103 (Ill. App. Ct. 2000). An implied waiver can occur in either of two situations: "'(1) an unexpressed intention to waive can be clearly inferred from the circumstances; or (2) the conduct of one party has misled the other party into a reasonable belief that a waiver has occurred.'" Nw. Diversified, Inc. v. Desai, 818 N.E.2d 753 (Ill. App. Ct. 2004) (quoting Batterman v. Consumers Illinois Water Co., 634 N.E.2d 1235 (1994).

For several reasons, we conclude that OHC's proposed amendment does not plausibly set forth the required elements of a waiver defense. First, OHC does not allege that Schulz had knowledge of his potential right to mandatory indemnification under the IBCA. OHC relies solely on the "conflict waiver" correspondence, which neither expressly nor implicitly apprises Schulz of the IBCA's indemnification provision. Indeed, the IBCA is not mentioned anywhere within the text of the letter. The fact that Schulz confirmed that he understood the implications of the joint representation and conflict of interest issues does not in any way demonstrate that he had knowledge

---

[3] Because this case presents a question of law under an Illinois statute, Illinois substantive law applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

5

of his rights under the IBCA.

Second, OHC does not allege that Schulz voluntarily and intentionally relinquished his right to indemnification. Even assuming that Schulz left the joint representation due to a disagreement on a "strategic decision," a conclusion that is unclear based on the record before us, the language of the Ackerman Link correspondence does not indicate that Schulz agreed to relinquish his statutory rights when he accepted the joint representation. Indeed, as noted above, the correspondence at issue contains no explicit waiver of rights under the IBCA nor any mention of a separate agreement between Schulz and OHC regarding such rights. Further, an unexpressed intention to waive cannot be clearly inferred from the circumstances or the language of the correspondence. In fact, a common sense reading of the letter reflects that Schulz merely agreed that if he withdrew from the joint defense based on a disagreement regarding a "strategic decision," he would not expect Ackerman Link to continue its defense on his behalf. Because we find OHC's waiver defense to be futile, its request to amend its answer will be denied.[4]

### B. Jury Demand

OHC next moves to include in its proposed amended answer a jury demand. OHC contends that the jury demand made by the plaintiffs in the underlying litigation extends to Schulz's cross-claim for indemnification.[5] In the alternative, OHC argues that even if plaintiffs' jury demand does not apply to the cross-claim, the Court has discretion to permit a jury trial under FED. R. CIV. P.

---

[4] We also note that, regardless of whether Schulz agreed or disagreed with Ackerman Link's decision to stipulate to dismissal of certain individual defendants, we have serious doubts as to whether this would amount to a "fundamental disagreement between clients on a strategic decision."

[5] In their amended complaint, plaintiffs included a jury trial demand "on all issues triable by jury." (Doc. No. 7.)

39(b). (OHC's Mot. 4-6.) Schulz responds that no right to a jury trial exists for his indemnification claim. He further argues that, even if the right applied, his cross-claim was not embraced by the perfected jury demand and permitting a late demand would cause prejudice. (Schulz's Mot. 6-7; Telephonic Conf. Tr. Oct. 1, 2012, pp. 3-4, 5-6.)

### 1. Seventh Amendment Right to Jury Trial

The federal right to a jury trial is guaranteed by the Seventh Amendment, which provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. "Suits at common law" refers to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989) (quoting Parsons v. Bedford, 3 Pet. 433, 447(1830)).

Although the Seventh Amendment "preserve[s] the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time." Curtis v. Loether, 415 U.S. 189, 193 (1974). Indeed, the Amendment has been interpreted to apply to "statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." Granfinanciera,, 492 U.S. at 41-42.

While "the Seventh Amendment is not binding on the states, it is binding on the federal courts even in diversity cases since the use of a jury is not deemed to be an application of substantive state law." De Lage Landen Operational Servs., LLC, 2011 WL 1627899, at *2 (E.D. Pa. Apr. 28, 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). To determine whether the Amendment preserves a right to jury trial for a claim for indemnification under the IBCA, we first

"compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of law and equity." Granfinanciera, 492 U.S. at 42. Then, we "examine the remedy sought and decide whether it is legal or equitable in nature." Id. The United States Supreme Court has advised that "the second stage of this analysis is more important than the first." Id.

In balancing the Granfinanciera factors, we find that the right to a jury trial applies to Schulz's cross-claim. First, while statutory indemnification claims did not exist in the 18th century, there is evidence that indemnification claims based on a contract or implied promise were tried to a jury in England prior to 1791. See Dawson v. Contractors Transport Corp., 467 F.2d 727, 732 (D.C. Cir. 1972) (citing several indemnification actions tried to a jury in 18th-century England). The similarity of such claims weighs in favor of a Seventh Amendment right to a jury trial.[6]

Second, the remedy Schulz seeks—to recover money from OHC— is legal in nature, rather than equitable. Generally, an action for money damages was "the traditional form of relief offered in the courts of law." Curtis, 415 U.S. at 196. An award of monetary relief, however, is not necessarily "legal" relief. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570 (1990). The Supreme Court has noted two exceptions in which monetary relief may be characterized as equitable: (1) where the relief is restitutionary;[7] and (2) where the monetary award is "incidental to or intertwined with injunctive relief." Id. at 570-71. Here, because neither of these

---

[6] We note that while indemnity claims that arise in the context of a breach of contract are distinct from those that arise from a statutory right, we nevertheless find that such claims are sufficiently analogous for purposes of our analysis.

[7] We note that courts have recognized that restitutionary claims are not automatically characterized as equitable, but must be individually examined to determine whether they are equitable or legal claims. See Dastgheib v. Genentech, Inc., 457 F. Supp. 2d 536, 542 (E.D. Pa. 2006) (noting that "restitution straddles the divide between legal and equitable relief and is not merely an exclusively equitable remedy.").

8

exceptions apply, we find that this factor also weighs in favor of a right to a jury trial. Thus, we conclude that the Seventh Amendment applies to Schulz's indemnification claim.

## 2. Reliance on Perfected Demand and Untimely Demand

Where the Seventh Amendment right applies and a jury demand has been made, it is well-established that a party can rely on the demand of another party "to the extent of the issues embraced by that demand." Collins v. Gov't of V.I., 366 F.2d 279, 284 (3d Cir. 1966). If the issues embraced by a claim are sufficiently similar to the claim for which a jury demand was made, the demand is effective as to both claims. See Quinn Const., Inc. v. Skanska USA Bldg., Inc., 2010 WL 4909587, at *8 (E.D. Pa. Nov. 30, 2010). In determining whether a demand encompasses a claim, the court must evaluate whether there is identity or significant overlap of the issues involved in the claims. Bro-Tech Corp. v. Thermax, Inc., 2009 WL 737349, at *2 (E.D. Pa. Mar. 19, 2009).

Even if a perfected demand does not apply to the claim at issue, upon motion, a court may nevertheless permit a jury trial under Federal Rule of Civil Procedure 39(b) if the issue is one for which a jury might have been demanded. Pratt v. Victoria Ins. Co., 2010 WL 4611000, at *2 (E.D. Pa. Nov. 12, 2010) (citing FED. R. CIV. P. 39(b)). In cases of an untimely jury demand, a court considers: (1) whether the issues are suitable for a jury; (2) whether granting the motion would disrupt the schedule of the court or the adverse party; (3) whether any prejudice would result to the adverse party; (4) how long the party delayed in bringing the motion; and (5) the reasons for the failure to file a timely demand. Id. (citing SEC v. Infinity Grp. Co., 212 F.3d 180, 196 (2000)).

When considering a party's right to a civil jury trial, courts must "indulge every reasonable presumption against waiver," and scrutinize "any seeming curtailment of the right . . . with the utmost care." Collins, 366 F.2d at 284.

Here, while we find that Schulz's cross-claim for indemnification is not sufficiently similar to the various contractual and tort claims of the underlying litigation for which the plaintiffs' demand was made, we will nevertheless allow OHC's request for a jury trial under Rule 39(b).

The five factors that a court considers in permitting an untimely jury demand weigh in favor of OHC's request. First, the only disputed issue of Schulz's cross-claim—whether Schulz's attorneys' fees were "reasonably incurred"—is suitable for a jury. In addition, because a trial date had not been set nor had any depositions been taken at the time OHC made its motion, we cannot find that granting the motion would disrupt the schedule of the Court or the adverse party. Further, although Schulz may be inconvenienced by the additional time required to pick a jury and prepare proposed jury instructions, we do not find that such a de minimis inconvenience constitutes prejudice. Finally, OHC indicated that the reason for its failure to file a timely demand, and the two-year delay in doing so, was its belief that the perfected demand applied to Schulz's claim. Although OHC's belief was in error, we do not find, on the record before us, that its request was made in bad faith. Accordingly, we will grant OHC's request to file a late jury demand.

### III. Conclusion

For the foregoing reasons, OHC's motion will be granted in part and denied in part. An appropriate Order follows.